(No. 6494—)

THOMAS N. GROGAN, d/b/a ILLINI HEAT & POWER, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 29, 1978.*

HORSLEY, KIMBLE, LOTT & SURMAN, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

POLOS, C.J.

This claim arises out of a contract awarded to Claimant for the installation of a 10,000 gallon underground gasoline storage tank in a parking lot of the Ottawa State Garage in Ottawa, Illinois. The contract called for the excavation of the site, installation of the appropriate footings and foundations for the tank, and the return of the parking lot and surrounding sidewalks to their original condition.

The contract was let for bidding, and Claimant's low bid of $4,970.00 was accepted by the State. At issue is whether Claimant should be paid the additional sum of $13,076.00 to compensate him for the difficulties encountered in completing the work, which were not foreseen by either party when the contract was executed.

The facts are not in dispute. Prior to bidding on the contract in question, the Claimant visited the installation site and made three test borings, each to a depth of eight feet. He testified that he encountered no unusual conditions in his testing.

Claimant commenced work on the site on September 11, 1970. On the first day of excavation, Claimant's employees encountered solid rock under a portion of the excavation site. They also struck and damaged a sewer which ran diagonally across the excavation site. The broken sewer and exceptionally heavy rains flood-

ed the excavation, and caused part of the surrounding parking lot and a nearby fence and gate to collapse. Claimant was required to place pumps in the excavation during construction to control the flooding.

When Claimant became aware of the existence of the rock and storm sewer on the site, he so advised the supervising architect of the Department of General Services. On October 20, 1970, the supervising architect sent Claimant a letter, requesting that Claimant submit a proposal for rerouting the sewer.

Claimant submitted the proposal to the Illinois Auditor General, along with the affidavit of Robert McAlpine, the Superintendent of the Division of Vehicles of the Department of General Services. The affidavit certified that the relocation of the sewer, and correction of the flooding, were emergency matters. Submitted with the proposal was a requisition signed by McAlpine, and approved by the director of the Department of General Services, requesting that Claimant be paid the sum of $13,076.00 for his work in correcting the flooding, removing rock from the excavation site, and rerouting the sewer.

Claimant said that he undertook the additional work on the site only after Robert Manker, Superintendent of Building and Grounds of the Secretary of State, had assured him that he would be paid for his additional efforts. Claimant subcontracted the job of removing the rock from the excavation, which took approximately two weeks. In rerouting the sewer Claimant had to saw through the asphalt pavement of the parking lot, dig a ditch approximately 25 feet from the tank, and lay cast iron sewer pipe around the tank.

Claimant fully performed all work required under the contract, including rerouting the sewer and replac-

ing the surface pavement. Claimant purchased all the materials used in rerouting the sewer, and has been paid only the original contract price of $4,970.00.

It is the position of the State that this claim for additional compensation is barred by the contract between Claimant and the State. With respect to Claimant's contention that he should receive additional compensation for removal of the rock at the site, the State points to Sections I-8 and II-7 of the contract, which, in substance, states that a contractor bidding on the job must familiarize himself with conditions at the site, and that the State would not be responsible for paying for additional work required by the failure of the contractor to note those conditions. With respect to the rerouted sewer, Respondent points to Sections II-5 and II-26, which provide, in substance, that the State made no effort to discover underground utilities, and that it is the responsibility of the contractor to determine if difficulties would be encountered in completing the job because of underground utilities.

The State's reliance upon these contractual provisions might be valid, had not the State previously engaged in a course of conduct clearly evidencing an intention not to hold Claimant to these terms. It is uncontradicted that before Claimant began excavating the rock and rerouting the sewer, he was assured by a person with supervisory authority in the Office of the Secretary of State that he would be paid for the additional work. In fact, the State went so far as to requisition the additional payment, and the director of the Department of General Services approved that requisition.

The Court feels that now that Claimant has satisfactorily performed the additional work, the State may

50

not abandon its prior position, upon which Claimant relied in relocating the sewer and excavating the rock from the job site. The record is clear that after the contract in question was executed, Claimant and the State of Illinois agreed to a modification of its terms. Specifically, Claimant agreed to perform the additional work discovered to be necessary to install the gasoline tank, and Respondent agreed to pay him the additional sum of $13,076.00. This agreement was supported by sufficient consideration and in any event, Claimant clearly relied upon it to his detriment. The parties made a valid modification of their contract, and Claimant is entitle to additional compensation.

The State does not contest the reasonableness of Claimant's charge for the additional work, and agrees that it was satisfactorily performed.

Claimant is therefore awarded the sum of $13,076.00.